UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROBERT SCHNUERINGER,<br><br>                 Petitioner,<br>    v.<br><br>PERRY RUSSELL, et al.,<br><br>                 Respondents. | Case No. 3:19-cv-00353-MMD-WGC<br><br>ORDER |

## I. INTRODUCTION

This case is a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 brought by Petitioner Robert Schnueringer, a prisoner at Warm Springs Correctional Center in Nevada. For the reasons set forth herein, the Court will deny Schnueringer's habeas petition.

## II. BACKGROUND

Schnueringer's conviction arose from events which occurred in Washoe County, Nevada, on February 5, 2012, that resulted in the death of Jared Hyde. On December 12, 2012, following a jury trial in Nevada's Second Judicial District Court, Schnueringer was found guilty of murder in the second degree. (ECF No. 12-14.) After a penalty hearing, he was sentenced to life in prison with parole eligibility after serving a minimum of 10 years. (ECF Nos. 12-16, 12-19.)

Schnueringer appealed the judgment of conviction. The Nevada Supreme Court affirmed the judgment on February 27, 2014. (ECF No. 13-15.) In its decision, the Nevada Supreme Court recounted the evidence presented at trial as follows:

> The jury heard testimony that 40 to 60 young people gathered at the Stead race track for a bonfire party. Tyler DePriest brought Jared Hyde to the party in his Dodge Durango. Towards midnight, a fight broke out between two girls. Taylor Pardick tried to break-up the fight but he was confronted by

Jake Graves after he warned one of the girls that he was not afraid to hit her. Pardick did not want to fight with Graves, but several people egged the fight on.

Robert Schnueringer and Andrue Jefferson were among those encouraging the fight. They identified themselves as belonging to a group called "Twisted Minds" or "TM," and they both shouted "TM" and urged Pardick to "rep for TM" by fighting Graves. When Pardick refused to fight, Jefferson reached around Graves and struck Pardick several times to get the fight started. Eric Boatman tried to intercede on Pardick's behalf, but ultimately Graves struck both of them and knocked them to the ground.

After these fights, Hyde headed towards the Durango. He walked alone and said out loud, "This is bullshit. You just knocked out my best friend." Zachary Kelsey, whose friends included Graves and Schnueringer, overheard Hyde and confronted him. Although Hyde's hands were held high, like he did not want to fight, Kelsey struck him twice in the head. Kelsey then grabbed Hyde as he fell and kneed him in the head twice. Zach Clough and Michael Opperman seized and restrained Kelsey, but Kelsey continued to yell at Hyde.

When Hyde picked himself up, he had blood running from his mouth, his shirt was torn, and he looked distraught. He said to DePriest, "Let's go, let's get out of here. I just got rocked," and he continued to move towards the Durango. While Kelsey continued to yell at him, Hyde approached the passenger side of the Durango where he was confronted by Schnueringer and Jefferson. They asked him if he was "still talking smack" and he replied, "No, I'm not, I'm not." Hyde was scared, about to cry, and did not want to be there. He did not have his arms up and he was not defending himself when Schnueringer punched him in the head.

Schnueringer delivered a forceful, knockout punch that caused Hyde's knees to buckle and his body to fall to the ground. Jefferson got in front of Hyde's face, exclaimed, "You got knocked the fuck out," and then delivered a similar punch to Hyde's head. Schnueringer and Jefferson kicked Hyde as he lay on the ground, and Jefferson celebrated by jumping around and saying, "I slept him, I slept him." When Cliffton Fuller checked his friend for a pulse, he felt something at first and then it went away.

Hyde was not breathing when he arrived at the hospital and efforts to resuscitate him failed. The medical examiner, Dr. Ellen Clark, conducted a forensic autopsy of the body. She determined that the manner of death was homicide and the cause of death was subarachnoid hemorrhage due to blunt force trauma. She found five separate areas of bleeding beneath the scalp surface and testified that these injuries were the result of blunt force trauma and they were consistent with being punched or kicked in the head numerous times. She also testified that the first blow to Hyde's head could have been the fatal blow, she could not identify one fatal impact site, and, in her opinion, the multiple injuries to different parts of Hyde's brain were cumulative. Dr. Clark had consulted with Dr. Bennet Omalu during the autopsy. Dr. Omalu is an expert on brain trauma and he testified that each and every one of the blows delivered to Hyde's head contributed to his death due to the phenomenon of repetitive traumatic brain injury.

(*Id.* at 2-4.)

On February 10, 2015, Schnueringer filed a petition for a writ of habeas corpus in the state district court. (ECF No. 13-18.) With the assistance of court-appointed counsel, Schnueringer filed a supplemental petition. (ECF No. 13-36.) After holding an evidentiary hearing in February 2018, the court denied habeas relief. (ECF Nos. 14-17, 14-18.) Schnueringer appealed. (ECF No. 14-21.) On May 15, 2019, the Nevada Court of Appeals entered an order affirming the lower court's decision. (ECF No. 14-38.)

Schnueringer initiated this federal habeas proceeding by mailing his habeas petition to this Court on June 20, 2019. (ECF No. 6.) In deciding Respondents' motion to dismiss (ECF No. 10), the Court dismissed several claims as not cognizable in a federal habeas proceeding. (ECF No. 18.) The Court also determined that several other claims had not been exhausted in state court. (*Id.*) Schnueringer elected to abandon the unexhausted claims and proceed on his remaining claims—Claims 1.1, 1.6, 2.1, 2.5, and 3.3. (ECF No. 19.) The Court addresses each of those claims below.

**III.   STANDARD OF REVIEW**

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law (that is, applies a rule that contradicts governing Supreme Court precedent) or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An

3

"unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014).; *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

4

objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## IV. DISCUSSION

### A. Ground 1.1

In Ground 1.1, Schnueringer alleges his conviction violates his rights under the Due Process Clause because the State presented insufficient evidence to establish his guilt beyond a reasonable doubt. Specifically, he contends there was insufficient evidence of malice, which is an element of second-degree murder in Nevada. He argues that, at most, the evidence demonstrated involuntary manslaughter.

Schnueringer presented his sufficiency of evidence claim to the Nevada Supreme Court in his direct appeal. The Nevada Supreme Court correctly identified the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), as the federal law standard to test whether sufficient evidence supports a state conviction. (ECF No. 13-15 at 2.) *See Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that standard, the court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted).

Relying on the recitation of the evidence excerpted above in Section II., the state supreme court stated:

> We conclude that a rational juror could reasonably infer from this evidence that Schnueringer acted with malice when he attacked Hyde and caused his death. *See* NRS 200.020; NRS 200.030(2); *Earl v. State*, 111 Nev. 1304, 1314, 904 P.2d 1029, P.2d 904 1029, 1035 (1995) (second-degree murder based on implied malice does not require an intentional killing but rather a killing under circumstances that show an abandoned and malignant heart). It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as

| | |
|---|---|
| 1 | here, substantial evidence supports the verdict. See *Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981). |

(ECF No. 13-15 at 4-5.)

Because this Court must review the Nevada Supreme Court's sufficiency of evidence determination under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). That means that even if this Court "think[s] the state court made a mistake," the Petitioner is not entitled to habeas relief unless the state court's application of the *Jackson* standard was "'objectively unreasonable.'" *Id.*

In Nevada, "the unlawful killing of a human being . . . with malice aforethought, either express or implied," is second-degree murder. NRS §§ 200.010, 200.030. Malice is implied "when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." NRS § 200.020. Having reviewed the testimony presented at trial, this Court is satisfied that the Nevada Supreme Court's rejection of Schnueringer's sufficiency of evidence claim is not an objectively unreasonable application of the *Jackson* standard.

Schnueringer does not dispute that he punched Hyde. The State presented numerous witnesses who testified, almost uniformly, that Schnueringer, without any provocation from Hyde, delivered a hard enough blow to make Hyde crumple to the ground. (ECF Nos. 12-3 at 284; 12-4 at 240, 300; 12-5 at 40, 193-95, 231-32, 281; 12-6 at 22.) As noted by the Nevada Supreme Court, the State's medical expert testified that each of the blows Hyde received contributed to his death. (ECF No. 12-6 at 83-86.) That same expert also explained how an unexpected punch to the side of the head—*i.e.*, the type of blow that, according to testimony, Schnueringer administered—"can result in rupture of the . . . veins at the base of your brain." (*Id.* at 74.) The expert noted that Hyde suffered this type of injury, which is fatal. (*Id.* at 87-88.) In summary, the evidence established that Schnueringer intentionally participated in an unprovoked, random act of

violence that killed Hyde. A rational trier of fact could therefore have readily found beyond a reasonable doubt the essential elements of second-degree murder.[1]

Ground 1.1 is denied.

**B.     Ground 1.6**

In Ground 1.6, Schnueringer claims his Sixth Amendment right to confront witnesses against him was violated because the trial court allowed Hyde's aunt to read a statement and letters from family members at his sentencing hearing. Hyde's aunt, Shawnee Glover, read a statement by Hyde's father and two letters written by Hyde's siblings. (ECF No. 12-16 at 47-52.) Schnueringer's counsel did not object to the reading of the statement or the letters. (*Id.* at 46, 51.)

Schnueringer challenged the admission of Glover's testimony in his direct appeal but did so primarily on state law grounds, making only a passing reference to a Confrontation Clause violation. (ECF No. 13-7 at 33-35.) In rejecting the argument, the Nevada Supreme Court cited only to state law. (ECF No. 13-15 at 9-10.) Even so, there is a presumption that the state court adjudicated the federal claim on the merits for the purposes of § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 299-301 (2013) (discussing circumstances in which a federal claim is presumed to have been adjudicated on the merits notwithstanding the state court's failure to address it).

There is no U.S. Supreme Court precedent establishing the right to confront witnesses at a sentencing hearing. And, as pointed out in a Ninth Circuit case, the Supreme Court in *Williams v. New York*, 337 U.S. 241 (1949), "held that the Confrontation Clause does not bar courts from considering unconfronted statements during sentencing proceedings." *Sivak v. Hardison*, 658 F.3d 898, 927 (9th Cir. 2011); *see also United States v. Littlesun*, 444 F.3d 1196, 1197 (9th Cir. 2006); *United States v. Petty*, 982 F.2d 1365 (9th Cir. 1993), *amended by* 992 F.2d 1015 (9th Cir. 1993). Thus, the Nevada

---

[1] The element of malice distinguishes murder from manslaughter. *See* NRS § 200.040.

7

Supreme Court did not unreasonably apply clearly established federal law in denying Schnueringer's challenge to the admission of Glover's testimony.

Ground 1.6 is denied.

### C. Ineffective Assistance of Counsel Claims

In his remaining claims, Schnueringer alleges he was deprived of his right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel ("IAC") in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show 1) that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) that it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984).

#### 1. Ground 2.1

In Ground 2.1, Schnueringer claims his counsel's performance fell below constitutional standards because counsel failed to move to sever his case from that of his co-defendants. He alleges that his defense was in conflict with the other defendants because his role in the incident, consisting of a single punch, was "minimal" compared to the other two. (ECF No. 6 at 33.) According to Schnueringer, he was unfairly prejudiced because the joint trial resulted in the defendants pointing fingers at each other. He further alleges that expert testimony would have established that his punch did not cause Hyde's death.

At the evidentiary hearing on Schnueringer's state habeas petition, his counsel, John Ohlson, testified that, based on his experience, "motions to sever defendants are rarely granted" and that he "didn't think there were grounds for it." (ECF No. 14-17 at 31.) He further explained that, prior to trial, the defendants were not attempting to blame the other defendants for the murder (*Id.* at 32.) He also testified that, although he presented evidence suggesting Kelsey had used brass knuckles, he did not have a convincing argument that Kelsey caused Hyde's death. (*Id.* at 33-34.) Finally, he testified that he did

8

not think "that either of the two defendants relied on Mr. Schnueringer's guilt in order to present their case." (*Id.* at 34.)

On appeal in the state habeas proceeding, the Nevada Court of Appeals correctly identified the holding in *Strickland* as the standard by which to assess Schnueringer's IAC claims. (ECF No. 14-38 at 2.) In addressing the claim that Ohlson was ineffective in failing to seek a severance, the court held as follows:

> Schnueringer argued his trial counsel was ineffective for failing to move to sever his case from his codefendants'. Schnueringer failed to demonstrate his trial counsel's performance was deficient or resulting prejudice. At the evidentiary hearing, counsel testified that he did not move to sever Schnueringer's case from his codefendants' cases because he believed such a motion would have been denied as the defenses were not irreconcilable with each other. The district court found Schnueringer failed to demonstrate his counsel's decision to not move for severance of the cases fell below an objective standard of reasonableness. Substantial evidence supports the district court's decision. *See Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) ("Tactical decisions are virtually unchallengeable absent extraordinary circumstances"); *see also Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) (recognizing that counsel is not ineffective for omitting a futile objection). Further, Schnueringer failed to demonstrate a reasonable probability of a different outcome had counsel filed a motion to sever because he did not demonstrate such a motion had a reasonable likelihood of success. *See Rowland v. State*, 118 Nev. 31, 44-45, 39 P.3d 114, 122-23 (2002) (explaining standard for when codefendants' cases should be severed). Therefore, we conclude the district court did not err by denying this claim.

(*Id.* at 3.)

This decision was neither an unreasonable application of the *Strickland* standard nor based on an unreasonable determination of the facts. Under Nevada law, joinder of defendants is "preferred" if it "does not compromise a defendant's right to a fair trial" because it "promotes judicial economy and efficiency as well as consistent verdicts." *Marshall v. State*, 56 P.3d 376, 379 (Nev. 2002). To obtain a severance, the defendant must show "'that if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

Schnueringer has not established a reasonable probability that counsel could have met this standard in bringing a motion to sever his trial from that of his co-defendants. To

9

the extent either defendant attempted to exculpate himself by pointing the finger at Schnueringer, neither presented any significant evidence that would not have been presented by the State had Schnueringer been tried alone. This Court also notes that, based on his testimony at the evidentiary hearing, Ohlson consulted a medical expert who informed him that Hyde's fatal injury would have caused Hyde to "drop almost immediately" and "expire right away." (ECF No. 14-17 at 28.) If so, Schnueringer most likely administered the fatal blow, based on the evidence presented at trial. Thus, there is no merit to Schnueringer's argument that his "minimal" role in the incident placed his defense in conflict with the other defendants.

In summary, the Nevada Court of Appeals' conclusion that counsel was not ineffective for not filing a motion to sever was not an unreasonable decision. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (finding that counsel is not ineffective for failing to file motions without merit). Thus, this Court must defer to the decision under § 2254(d).

Ground 2.1 is denied.

### 2. Ground 2.5

In Ground 2.5, Schnueringer claims counsel provided ineffective assistance by not presenting a closing argument. He contends that counsel did not have a valid strategic reason for waiving the argument. He argues that it "became critical that an argument be made to the jury distinguishing Petitioner's involvement from that of the others." (ECF No. 6 at 51.) He further argues that preventing the prosecution from making a rebuttal argument can be a reasonable strategic decision, but it was not in this case where the defendants each pointed at the others as the ones responsible for the fatal blows.

The Nevada Court of Appeals rejected this claim as follows:

> Schnueringer argued his trial counsel was ineffective for waiving the opportunity to present a closing argument. Schnueringer failed to demonstrate his counsel's performance was deficient or resulting prejudice. At the evidentiary hearing, counsel testified he had prepared to present a closing argument and believed the State's closing argument was light, but based on his experience he believed the prosecutor had prepared a significant rebuttal argument. Counsel testified that for those reasons, he made the tactical decision to waive the defense closing argument in order to avoid a rebuttal argument from the State, "Tactical decisions are virtually unchallengeable absent extraordinary circumstances," *Ford*, 105 Nev. at

10

> 853, 784 P.2d at 953, and the district court found Schnueringer did not demonstrate his counsel's decision to waive closing argument amounted to an extraordinary circumstance. Substantial evidence supports the district court's decision. *See Bell v. Cone*, 535 U.S, 685, 701-702 (2002) (explaining that it was not objectively unreasonable for defense counsel to make a tactical decision to waive closing argument out of concern that the prosecutor would make a persuasive rebuttal argument).

(ECF No. 14-38 at 4-5.)

The court's factual findings are supported by the transcript of the evidentiary hearing. (ECF No. 14-17 at 34-35.) Ohlson also testified that he was able to convince to the other two defense counsel to waive closing argument with him. (ECF No. 14-17 at 50.) Consequently, the tactic yielded the additional benefit of preventing the other defense counsel from arguing that Schnueringer was more culpable than their respective clients. The Nevada Supreme Court's conclusion that Ohlson did not perform below the *Strickland* standard was not objectively unreasonable.

The state court's prejudice determination was also reasonable. As noted above, the evidence strongly supported a finding that Schnueringer acted with malice. In addition, there was no evidence that Hyde provoked him. Thus, there is not a reasonable likelihood that a closing argument from Ohlson would have convinced the jury to opt for manslaughter rather than murder. *See* NRS §§ 200.040, 200.050. The jury chose the lesser of the two possible murder verdicts.

Ground 2.5 is denied.

### 3. Ground 3.3

In Ground 3.3, Schnueringer claims counsel was ineffective by failing to present mitigating evidence at his sentencing hearing. According to Schnueringer, counsel could have presented evidence, such as letters of support and testimony from friends and family, to bolster his argument for a sentence of ten to 25 years.[2] Schnueringer identifies his brother, Karl Schnueringer, his aunt, Marlene Bjorson, a middle school counselor,

---

[2] For a conviction of second-degree murder, the sentencing court had only two options: life or a definite term of 25 years, with parole eligibility after ten years for each. *See* NRS § 200.030.

Catherine Barber, and a special education teacher, Kelly Cruz, as potential mitigation witnesses.

Schnueringer presented the testimony of the latter three individuals at his state evidentiary hearing. Cruz testified about Schnueringer's mother dying when he was 14 years old and how that impacted him. (ECF No. 14-17 at 71-72.) She also testified that he was a good person and that she never had a problem with him in school. (*Id.* at 73.) Barber testified that Schnueringer's father had killed his mother and that, as a result, Schnueringer and his brother were sent to live with different grandparents. (*Id.* at 79-80.) She further testified that, due to lack or supervision or structure, Schnueringer "checked out" and became less involved in his prior activities. (*Id.* at 80-81.) She stated that he was "good person who had bad circumstances." (*Id.*) Bjorson also testified about how the death of Schnueringer's mother negatively impacted him, causing him to act out at school and to eventually stop attending. (*Id.* at 89-91.)

Ohlson testified that he contacted "several people" in relation to sentencing, including "a couple of school teachers" and Schnueringer's brother. (*Id.* at 36-37.) He noted that the teachers "had to concede disciplinary problems of [Schnueringer's] in school . . . including fighting." (*Id.*) He also testified that knew about Schnueringer's father killing his mother but did not think that "you mitigate an act of violence based upon another act of violence." (*Id.* at 37-38.)

The Nevada Court of Appeals held as follows with respect to Ohlson's alleged ineffectiveness for failing to call witnesses in the sentencing phase:

> Schnueringer argued his counsel was ineffective during the sentencing hearing for failing to call witnesses to testify in mitigation concerning his difficult childhood and state he was a good person in bad circumstances. Schnueringer failed to demonstrate his counsel's performance was deficient or resulting prejudice. At the evidentiary hearing, counsel testified he had communicated with these potential witnesses but chose not to present their testimony at the sentencing hearing. Counsel testified that he believed their testimony may not have been helpful and could have included harmful information concerning Schnueringer's school disciplinary problems. The district court found counsel's decisions concerning these potential mitigation witnesses were reasonable given the circumstances in this matter. Substantial evidence supports the district court's findings. *See Rhyne* [*v. State,* 118 Nev. 1, 8, 38 P.3d 163, 167 (2002)]. Given the record in this case, Schnueringer failed to demonstrate a reasonable probability of a

12

> different outcome at the sentencing hearing had counsel presented additional mitigation evidence. Therefore, we conclude the district court did not err by denying this claim.

(ECF No. 14-38 at 5-6.)

Here again, the decision of the Nevada Court of Appeals was neither an unreasonable application of the *Strickland* standard nor based on an unreasonable determination of the facts. As noted, the only two sentencing options available to the judge were a term of 25 years or life. While he did not call any witnesses, Ohlson presented compelling arguments in favor of a 25-year term. (ECF No. 12-16 at 13-19.) The Division of Parole and Probation recommended a life sentence. (*Id.* at 7, 26.)

In choosing to follow the Division's recommendation, the sentencing judge noted that Schnueringer "took somebody who was simply standing by a vehicle and was already seriously injured and beat him to death." (*Id.* at 58.) The judge gave Jefferson the same sentence citing the same reasons but gave Kelsey the lesser sentence due to the different nature of his role in Hyde's death and his "lesser criminal history." (*Id.* at 56, 59.) Given these circumstances, there is very little likelihood that the cited evidence about Schnueringer's character and difficult past would have changed the sentencing outcome if Ohlson had presented it. Based on the record before this Court, the Nevada Court of Appeals reasonably concluded that Schnueringer failed to satisfy either prong of the *Strickland* standard.

Ground 3.3. is denied.

**V.     CONCLUSION**

For the reasons set forth above, Schnueringer's petition for habeas relief will be denied.

*Certificate of Appealability*

This is a final order adverse to a habeas petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within

the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See Id.*

Having reviewed its determinations and rulings in adjudicating Schnueringer's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Schnueringer's habeas claims.

It is therefore ordered that Schnueringer's petition for writ of habeas corpus (ECF No. 6) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that Respondents' motion for leave to file a surreply (ECF No. 26) is denied as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 22nd Day of November 2021

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE